**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ASHELY CHAPMAN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-25-2661** |
| **PRINCE GEORGE'S COUNTY BOARD OF EDUCATION, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

# MEMORANDUM OPINION

Ashley Chapman has sued Prince George's County Board of Education (the "Board") and Sedgwick Claims Management Services, Inc. ("Sedgwick"), a third-party claims administrator for the Board. Chapman claims the Board mistreated her elementary school-aged children, denied them disability accommodations, and retaliated against her for complaining about the mistreatment of her children. Chapman also claims that Sedgwick mishandled her liability claims against the Board in retaliation for her prior complaints and in violation of Maryland law. Chapman alleges violations of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Americans with Disabilities Act, 42 U.S.C. § 12131–12165 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). She also asserts state law claims of negligence, failure to investigate, and intentional infliction of emotional distress. The Board and Sedgwick have moved to dismiss Chapman's claims for lack of standing and failure to state a claim upon which relief can be granted.

For the reasons explained below, the motions to dismiss are granted. The Court finds that Chapman lacks standing to bring ADA, Section 504, and equal protection claims to redress discrimination against her children. While Chapman has standing to bring a First Amendment

retaliation claim, she has failed to plausibly allege that either defendant is liable under 42 U.S.C. § 1983. Chapman's federal claims are dismissed without prejudice. With the federal claims dismissed, the Court declines to exercise supplemental jurisdiction over Chapman's state law claims.

## I. Background

In her amended complaint, Chapman chronicles her and her children's difficult experience in the Prince George's County Public School System ("PGCPS") over a seven-year period, from June 12, 2018 to August 12, 2025. ECF 20, at 1. Chapman alleges that, during this period, her children were excluded from school events and denied awards by their teachers, *id.* at 4, 16–17, denied consideration for disability accommodations, *id.* at 6, 8, left unsupervised by school staff, *id.* at 5, 15, subjected to "fabricated complaints" and "unfair grading practices" by their teachers, *id.* at 6, 7, subjected to "student attendance harassment," *id.* at 6, repeatedly bullied by other students, including because of their race and weight, *id.* at 5, 7, 11, 12, sexually harassed by other students, *id.* at 7, and offered drugs by other students, *id.* When Chapman raised these issues directly with the school, the school staff "minimized" her concerns, *id.* at 5, did not conduct an investigation, *id.* at 13, and continued to put her children at risk, *id.* at 11–13.

Chapman's relationship with PGCPS was not limited to her role as a parent of students. Beginning in July 2023, Chapman worked as a "resident teacher" at PGCPS. *Id.* at 7. However, the stress from her children's experiences at school caused "severe emotional distress for [Chapman], including anxiety and PTSD." *Id.* at 15. Chapman's stress was so severe that she was "unable to function at her job" and had to take a leave of absence on February 19, 2024. *Id.* at 13, 15. The stress caused by PGCPS's treatment of her and her children "ultimately le[d] to [her] forced resignation from her position at PGCPS." *Id.* at 2; *see also id.* at 25.

Chapman availed herself of other grievance mechanisms before filing this litigation. After the principal denied one of her children's disability accommodations plans in October 2023, *id.* at 8, Chapman filed a grievance with PGCPS, *id.* at 9. Her child's accommodations plan was "approved months later." *Id.* at 10. Then, in April 2024, Chapman filed a complaint with the Office of Civil Rights ("OCR") about harassment of one of her other children on the basis of the child's race and disability status. *Id.* at 14. Chapman's OCR complaint remains unresolved. *Id.*

On January 10, 2025, Chapman sent a demand letter to the Board and the PGCPS Superintendent outlining her dissatisfaction with and intent to sue PGCPS. *Id.* at 17. Her letter was then forwarded to Sedgwick, *id.* at 17, the third-party administrator retained by PGCPS to handle its liability claims, *id.* at 4. On January 20, 2025, a claims adjuster from Sedgwick called Chapman to discuss her claims. *Id.* at 17. In her amended complaint, Chapman alleges the adjuster was "skeptical and condescending," failed to take a statement from her, and failed to take her seriously. *Id.* On May 22, 2025, Chapman received a denial letter from Sedgwick, which she subsequently appealed. *Id.* at 17–18. When she requested a status update on the appeal in August 2025, she was informed that "Sedgewick's position was the same and the appeal was finished on May 28, 2025." *Id.* at 18.

Chapman alleges that, in its handling of her claim against PGCPS, "Sedgwick lacked transparency and accountability by refusing to disclose investigative findings, Sedgwick deprived [her] of the ability to evaluate or challenge the denial," and Sedgwick "violat[ed] basic standards of good-faith claim handling and potentially breaching contractual or regulatory obligations." *Id.* She further alleges that the timing of Sedgwick's denial "supports [her] allegation that Sedgwick's handling was not neutral but part of an ongoing pattern of third-party retaliation against her for asserting civil rights violations." *Id.* at 19.

Chapman originally filed this lawsuit against PGCPS and Sedgwick on behalf of herself and her children. ECF 1. PGCPS moved to dismiss the complaint because Chapman, a non-lawyer, cannot bring claims on behalf of her children and because PGCPS is not an entity capable of being sued. ECF 8, at 2. Chapman subsequently moved to amend her complaint to replace PGCPS with the Board as the proper defendant and to remove her children as plaintiffs. ECF 15, at 1–2. The Court granted her motion because Chapman could file the amended complaint as a matter of right. ECF 16 (citing Fed. R. Civ. P. 15(a)(1)(B)).

The Court reads Chapman's amended complaint to allege the following claims.[1] First, Chapman claims the Board and Sedgwick violated her constitutional rights, and she seeks damages and injunctive relief for the violations under 42 U.S.C. § 1983. Specifically, Chapman claims the defendants violated her First Amendment rights by retaliating against her for making complaints about the treatment of her children. ECF 20, at 22–23.[2] Chapman also claims the Board, through its employees, violated the Equal Protection Clause of the Fourteenth Amendment by subjecting her children "to disparate treatment based on their race and disability status." *Id.* at 23–24. Next,

[1] In her amended complaint, Chapman identifies these claims: retaliation, equal protection, disability discrimination, and state tort violations (negligence and failure to investigate). ECF 20, at 22–25. However, in each of these claims, Chapman also alleges that the defendants' actions "caused intentional infliction of emotional distress." *Id.* at 22; *see also id.* at 23–25. Intentional infliction of emotional distress is a distinct legal claim under state law. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (outlining the elements of an intentional infliction of emotional distress claim under Maryland law). Consequently, the Court liberally construes the amended complaint to include a state law claim for intentional infliction of emotional distress.

[2] Chapman describes this claim as "Retaliation in Violation of First *and Fourteenth Amendments* (42 U.S.C. § 1983)." ECF 20, at 22 (emphasis added). However, "[n]either [the Fourth Circuit] nor the Supreme Court has recognized an equal protection right to be free from retaliation" under the Fourteenth Amendment. *Wilcox v. Lyons*, 970 F.3d 452, 458 (4th Cir. 2020). To the contrary, the Fourth Circuit consistently has held that "[a] pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause." *Id.* (quoting *Edwards v. Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)).

Chapman claims that the Board, through its employees, violated the ADA and Section 504 of the Rehabilitation Act by denying services to her children who have disabilities and retaliating against them. *Id.* at 24. Finally, Chapman alleges at least three state law claims.[3] She claims the Board and Sedgwick were negligent, *id.* at 24–25, failed to investigate her claims, *id.*, and intentionally inflicted emotional distress upon her, *see id.* at 22–24.

Sedgwick and the Board both moved to dismiss Chapman's claims under Rule 12(b)(1) for lack of standing and under Rule (12)(b)(6) for failure to state a claim upon which relief can be granted. ECF 26 & 42. Chapman filed responses in opposition to both motions to dismiss. ECF 29 & 45. Sedgwick and the Board filed replies. ECF 33 & 47.[4]

## II. Standard of Review

"A motion to dismiss based on lack of subject matter jurisdiction, pursuant to [Rule] 12(b)(1), raises the question of whether the court has the competence or authority to hear and decide a particular case." *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*, 329 F. Supp. 3d 146, 149 (D. Md. 2018). "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Messer v. Garrison Inv. Grp., LP*, 177 F.4th 507, 517 (4th Cir. 2026) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

[3] Chapman also invokes several Maryland statutes, including the Maryland Insurance Code § 27-1001 and the Code of Maryland Regulations (COMAR) 31.15.08, in her filings. ECF 20, at 19; ECF 29, at 6, 8–12. However, she does not include any specific claims under these statutes in her claims for relief. *See* ECF 20, at 22–25. It is unclear from the amended complaint what claims, if any, Chapman intended to bring under these statutes or whether she has a private cause of action under them.

[4] In response to Sedwick's reply brief, Chapman submitted a "Statement regarding color of law, retaliation, and duty of care." ECF 34. This statement could be construed as a surreply because Chapman responds to arguments in Sedgwick's reply brief. It could also be construed as a supplemental complaint because it contains allegations against the defendants. Either way, Chapman did not file a motion for leave to file a surreply or an amended complaint. Nevertheless, the Court considered Chapman's statement in deciding the motions to dismiss.

377 (1994)). "The party invoking federal jurisdiction bears the burden [to prove standing]." *S.C. State Conf. of the NAACP v. Weaver*, 181 F.4th 353, 368 (4th Cir. 2026) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). When, as here, defendants contest subject matter jurisdiction "on the grounds that the complaint's allegations are insufficient to confer jurisdiction"—a facial challenge to jurisdiction—"we assess the motion under the same standard as one brought under Rule 12(b)(6)." *Ministry of Defence of Kuwait v. Naffa*, 105 F.4th 154, at 159 (4th Cir. 2024). Dismissal for lack of subject matter jurisdiction is proper "where a claim fails to allege facts upon which the court may base jurisdiction." *Hausner v. United States*, 811 F. Supp. 3d 691, 698 (D. Md. 2025) (quoting *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005)).

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (citation modified).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777

(4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (citation modified). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (citation modified). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citation modified).

Chapman does not have counsel. "[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe Chapman's pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require the Court to attempt to discern the unexpressed intent of the plaintiff" and the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation modified). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citation modified).

## III. Discussion

The Court first addresses whether Chapman has standing to bring any of her federal claims. She has standing to bring one: the First Amendment retaliation claim. The Court then addresses whether Chapman can state a claim under § 1983 for First Amendment retaliation against either defendant. She cannot. Chapman's federal claims are dismissed without prejudice. Without a surviving federal question, the Court declines to exercise supplemental jurisdiction over Chapman's state law claims.

**A. Standing**

The defendants move to dismiss Chapman's federal claims because she does not have standing. Motions to dismiss for lack of standing are generally reviewed as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See CGM, LLC v. BellSouth Telecomms., Inc.,* 664 F.3d 46, 52 (4th Cir. 2011). "Standing is a threshold jurisdictional question[.]" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (citation modified).

To establish standing at this stage, a plaintiff must allege "(i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Poppleton Now Cmty. Ass'n, Inc. v. La Cite Dev., LLC*, 175 F.4th 455, 462 (4th Cir. 2026) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "In other words, to satisfy Article III, a plaintiff must have a sufficient 'personal stake' in the alleged dispute and have an alleged injury that is particularized as to him." *Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 163 (4th Cir. 2023) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

In her initial complaint, Chapman asserted claims on behalf of herself and her children. *See* ECF 1, at 5–7. After PGCPS correctly pointed out in a motion to dismiss that a non-attorney parent cannot litigate the claims of their minor children in federal court, *see* ECF 8, at 2; *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005), Chapman filed an amended complaint that removed her children as plaintiffs and attempted to assert claims on her own behalf, *see* ECF 15, at 1–2. Chapman's amended complaint did not cure the standing problem with her disability discrimination or equal protection claims.

In her amended complaint, Chapman still includes disability discrimination claims premised only on actions taken against her children and in violation of her children's rights under

the ADA and Section 504 of the Rehabilitation Act. Specifically, Chapman alleges that the Board refused to give her children "protected services," including an Individualized Education Program and a 504 plan, and "failed to investigate racially motivated attacks on a disabled child." ECF 20, at 24. These allegations imply a violation of the rights of her children, not a violation of her rights. "[The] standing doctrine strongly disfavors so-called 'third party standing' cases, where . . . the plaintiff . . . is vindicating rights that more properly belong to somebody else." *Maryland v. U.S. Dep't of Agric.*, 151 F.4th 197, 212 (4th Cir. 2025) (citation modified); *see also Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007) ("It is well settled that under Article III of the United States Constitution, a plaintiff . . . cannot rest his claim to relief on the legal rights or interests of third parties." (citation modified)). Chapman's children may have standing to bring the ADA and Section 504 claims alleged in the amended complaint, but Chapman does not have standing to bring them. *See Dahlman v. Washington Montessori, Inc.*, 818 F. Supp. 3d 772, 781 (E.D.N.C. 2025). Chapman's ADA and Section 504 claims are dismissed for lack of standing.

Chapman's § 1983 equal protection claim fares no better. Chapman alleges that the Board "subjected *the minor Plaintiffs* to disparate treatment based on race and disability status, resulting in educational harm, trauma, and loss of services and causing the Plaintiff emotional harm[.]" ECF 20, at 23–24 (emphasis added). Chapman does not, however, allege the Board subjected *her* to disparate treatment based on her race or disability status.[5] Absent a cognizable constitutional injury of their own, a parent does not have standing to bring § 1983 claims based on the disparate

[5] In her amended complaint, Chapman briefly notes that a school administrator once told her that "the Plaintiff[']s issues could be due to Plaintiff's race." ECF 20, at 9. Chapman does not, however, make any specific allegations regarding what her race is or how the Board treated her differently than parents of other races. Instead, her equal protection claim focuses solely on the disparate treatment of her children and alleges that "[s]imilarly situated *students* were treated more favorably under similar circumstances." *Id.* at 23–24 (emphasis added).

treatment of their children. *See, e.g.*, *Doe #1 v. Montgomery Cnty. Bd. of Educ.*, No. CV PJM-21-0356, 2021 WL 6072813, at *6 (D. Md. Dec. 23, 2021) (holding that parents lacked standing to bring an individual § 1983 claim because they "have suffered no cognizable individual injury of their own under § 1983"); *Harrower ex rel. J.H.1 v. Eastland Indep. Sch. Dist.*, 786 F. Supp. 3d 998, 1013 (N.D. Tex. 2025) (holding parents lacked standing to bring equal-protection claims under § 1983 "on behalf of their children for the alleged violation of the children's constitutional rights" because they did "not allege a deprivation of their own rights"); *Anthony v. O'Fallon Twp. High Sch. Dist. 203 Bd. of Educ.*, 712 F. Supp. 3d 1109, 1128–29 (S.D. Ill. 2024) (recognizing that "standing for parents to sue in an individual capacity in § 1983 suits is limited" and holding that a parent lacked standing to bring a § 1983 equal protection claim based on the treatment of her child). Because Chapman has only alleged that her children's equal protection rights—not her own—were violated, she has not satisfied the injury-in-fact requirement of standing. Her equal protection claim is dismissed without prejudice for lack of standing.

Chapman does, however, have standing to bring her First Amendment retaliation claim under § 1983. Chapman alleges that she made repeated complaints about the treatment of her children by PGCPS staff and that PGCPS employees and administrators retaliated against her by mistreating her children. While the alleged retaliatory conduct targeted her children, it still caused a cognizable harm to Chapman. She alleges that this mistreatment of her children was an attempt to "silence" her and thus infringed upon her First Amendment right to freedom of speech. ECF 20, at 23.

The Fourth Circuit's decision in *Smith v. Frye* is relevant and instructive. 488 F.3d at 272–73. In *Frye*, the Fourth Circuit assessed whether an adult son had standing to bring a First Amendment retaliation claim based on the firing of his mother from her position as a magistrate

clerk soon after he announced he was running for public office as the county circuit court clerk. *Id.* at 265–66. To establish standing, the son asserted that the termination of his mother's employment "chilled" his First Amendment free speech rights as a candidate for public office. *Id.* at 272. The Fourth Circuit held that the adverse action taken against the mother could not establish the son's injury for his First Amendment claim. *Id.* at 273. It reasoned that "an adverse employment action against [the mother] does not create a concrete and particularized violation of any legally protected right of [the son]." *Id.* The court noted there was no authority to support the contention that a person's speech might be "chilled by an allegedly retaliatory action . . . exacted upon a different person." *Id.*

*Frye* does not control the outcome here. This case, unlike *Frye*, involves alleged retaliation against school-aged children in response to their parent's attempt to advocate for them in school. As one district court persuasively reasoned, a "parent's constitutional right to criticize school officials would collapse" if they could not bring First Amendment retaliation claims based on the retaliatory mistreatment of their children. *Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F. Supp. 2d 1120, 1128 (D. Or. 2003). "School officials could immunize themselves from any criticism by swiftly punishing any student who is the child of a critical parent." *Id.* at 1128–29. "The parents would not be harmed because only the child endured the brunt of the official's retaliation. In the process, students, parents, and other community members would receive the unequivocal message that the children of critical speakers would suffer the consequences of that speech." *Id.* at 1129. Other courts have held similarly. *E.g.*, *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 317 & n.6 (E.D.N.Y. 2016) (allowing a First Amendment retaliation claim where parents alleged their child was repeatedly suspended in retaliation for the parents' complaints to the school); *see also Smith v. L.A. Unified Sch. Dist.*, No. CV 13-5395-FMO (PJW), 2015 WL

9684905, at *4–5 (C.D. Cal. Sept. 10, 2015) (allowing a First Amendment retaliation claim where part of the alleged retaliation for the parent's complaints to the school was the transfer of his daughter to another school), *report and recommendation adopted sub nom. Smith v. Cal. Bd. of Educ.*, No. CV 13-5395 FMO(PJW), 2016 WL 107898 (C.D. Cal. Jan. 7, 2016); *Jones v. Bay Shore Union Free Sch. Dist.*, 947 F. Supp. 2d 270, 276–77 (E.D.N.Y. 2013) (allowing parent's First Amendment retaliation claim when their daughter was suspended in response to her parent's criticism of the school district).

Chapman has plausibly alleged a constitutional injury—the chilling of her speech caused by the alleged retaliation against her children. Chapman has standing to bring her First Amendment retaliation claim.

**B. First Amendment Retaliation Claim**

With the threshold requirement of standing satisfied, the Court assesses whether Chapman has plausibly stated a § 1983 claim for First Amendment retaliation. For the reasons explained below, she has not. The Board and Sedgwick cannot be sued under § 1983.

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived him or her of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted). Two elements are essential to state a claim under § 1983: (1) the plaintiff must have suffered a deprivation of "a right secured by the Constitution and laws of the United States," and (2) the act or omission causing the deprivation must have been "committed by a person acting under color of state law." *West v. Atkins*,

487 U.S. 42, 48 (1988). Chapman's § 1983 claims fail as a matter of law because neither the Board nor Sedgwick is a "person acting under color of state law."

"State agencies are not 'persons' within the meaning of § 1983."[6] *Mayo v. Bd. of Educ. of Prince George's Cnty.,* 797 F. Supp. 2d 685, 689 (D. Md. 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)), *aff'd*, 713 F.3d 735 (4th Cir. 2013). The Maryland Court of Appeals has "long considered county school boards to be State agencies rather than independent, local bodies." *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 973 A.2d 233, 236 (Md. 2009) (collecting cases). As a state agency, the Board cannot be sued under § 1983. *E.g.*, *Brown v. Prince George's Cnty. Bd. of Educ.*, No. GJH-18-2723, 2019 WL 3944983, at *3 (D. Md. Aug. 20, 2019) ("Courts in this District have repeatedly and consistently explained that Maryland county boards of education do not qualify as "persons" within the meaning of the statute and therefore cannot be sued under § 1983." (citing *Schiffbauer v. Schmidt*, 95 F. Supp. 3d 846, 851–52 (D. Md. 2015); *Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F. Supp. 3d 497, 501–02 (D. Md. 2014); *Mayo*, 797 F. Supp. 2d at 689; *J.G. ex rel. Gusman v. Prince George's Cty. Bd. of Educ.*, No. PWG-16-1008, 2017 WL 930130, at *4 (D. Md. Mar. 8, 2017))); *see also Press v. Wicomico Cnty. Bd. of Educ.*, No. GLR-25-2972, 2026 WL 2263201, at *3 (D. Md. Aug. 6, 2026) (collecting additional cases). Chapman's § 1983 claims against the Board are dismissed with prejudice.

Chapman's remaining § 1983 claim is against Sedgwick, the "third-party administrator responsible for handling liability claims against PGCPS." ECF 20, at 4. Chapman alleges that, on January 16, 2025, the Board forwarded her January 10, 2025 demand letter to "PGCPS liability

---

[6] The Board did not raise this argument in its motion to dismiss. Even so, the Court must independently review complaints filed in forma pauperis, as Chapman has done here, ECF 4, and dismiss any claim that is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii).

insurance Sedgwick Claims Management." *Id.* at 17. Chapman does not attach the letter to her pleading or describe the substance of the letter or her claims. All she alleges is that Sedgwick's investigation in her claims "lacked transparency and accountability," "violat[ed] basic standards of good-faith claim handling, and "potentially breach[ed] contractual or regulatory obligations." *Id.* at 18.

To be liable under § 1983, the defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). If the defendant is not a state actor, the defendant's conduct must "be fairly attributable to the State." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009) (quoting *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006)). "[T]here is 'no specific formula' for determining whether state action is present . . . . 'What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity.'" *Id.* at 182 (quoting *Holly*, 434 F.3d at 292).

"[A] private entity can qualify as a state actor in a few limited circumstances—including, for example, . . . when the private entity performs a traditional, exclusive public function[.]" *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). However, "[v]ery few functions fall into that category." *Id.* (citation modified); *see also id.* at 810 (collecting cases). For example, a private insurer that withholds payment for a disputed medical treatment pending a claims review, as authorized by state law, does not perform a public function. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55–57 (1999). This is because neither "[h]istorical practice" nor "the state statutory scheme" governing private insurance establish such activities as the traditional and exclusive prerogative of the state. *See id.* at 56. By contrast, a security officer who makes arrests on behalf of the county sheriff's department does perform a public function because

policing is "one of the basic functions of government" and arrest is "the function most commonly associated with the police." *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003) (citation modified); *see also DeBauche*, 191 F.3d at 508 (recognizing that "the operation of a town" is a traditional public function); *Goldstein v. Chestnut Ride Vol. Fire Co.*, 218 F.3d 337, 343–44 (4th Cir. 2000) (concluding that fire protection is a function "traditionally exclusively reserved to the State"); *Coleman v. Aramark*, 31 F. App'x 808, 809 (4th Cir. 2002) (per curiam) (unpublished) (assuming without deciding that Aramark acted under color of state law for purposes of § 1983 by "performing the traditional governmental function of providing food service at the Jail").

Here, Chapman does not include any allegations in her amended complaint from which the Court can plausibly infer that Sedgwick performed a traditional, exclusive public function. She does not cite any case law or historical practice suggesting the administration of claims filed against public agencies is a function reserved to the government. If, as Chapman's pleading suggests, Sedgwick merely investigated and administered claims filed against the Board, Sedgwick is not a state actor. Such activities do not resemble the examples of traditional and exclusive public functions. If anything, Sedgwick's conduct is similar to the administration of insurance claims by private insurers, which is *not* a traditional, exclusive public function. The Board's delegation of the administration of claims to Sedgwick, a private company, pursuant to a contract does not convert Sedgwick into a state actor. *See Halleck*, 587 U.S. at 814 ("[T]he fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor.").[7]

---

[7] Other courts have held that Sedgwick is not a state actor for different reasons. *See, e.g.*, *Mnyandu v. Cnty. of Los Angeles*, No. CV 14-6485 DSF (FFM), 2016 WL 4443199, at *11 (C.D. Cal. July 6, 2016) (applying the test for municipal liability under *Monell v. Dep't of Soc. Servs. N.Y.*, 436 U.S. 658, 694 (1978), and holding that Sedgwick is not a state actor), *report and recommendation adopted sub nom. Myandu v. Cnty. of Los Angeles*, No. CV 14-6485 DSF (FFM), 2016 WL

Chapman's § 1983 claims against Sedgwick are dismissed.

### C. Remaining State Claims

The remaining claims—negligence, failure to investigate, and intentional infliction of emotional distress—arise under state law. The Court has supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(a). However, because the Court has dismissed the federal claims over which it has original jurisdiction, the Court "need not exercise" supplemental jurisdiction. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). The Court may dismiss the state law claim without prejudice instead. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded by statute on other grounds as stated in Royal Canin*, 604 U.S. at 40. The Court therefore declines to exercise supplemental jurisdiction over Chapman's remaining state law claims. These claims are dismissed without prejudice.

## IV. Conclusion

The defendants' motions to dismiss, ECF 26 & 42, are granted. Chapman's claims are dismissed. Her § 1983 retaliation claim against the Board is dismissed with prejudice, and her remaining claims are dismissed without prejudice. A separate order follows.

Date: September 29, 2026

Deborah L. Boardman
United States District Judge

---

4443134 (C.D. Cal. Aug. 19, 2016); *Davis v. Transdev Servs. Inc.*, No. 1:24-CV-01704-TRJ, 2025 WL 3236979, at *4 (N.D. Ga. Mar. 10, 2025) (declining to apply a particular test because "Plaintiff's Second Amended Complaint contains no allegations that could establish Sedgwick is a state actor for purposes of the First Amendment" under § 1983).